1
2
3
4                          UNITED STATES DISTRICT COURT
5                                DISTRICT OF NEVADA
6                                       * * *
7    BRANCH BANKING AND TRUST                      Case No. 2:11-CV-1776 JCM (GWF)
     COMPANY,
8                                                                ORDER
                                    Plaintiff(s),
9
10         v.
11   FORD DUNEVILLE, LLC, et al., LLC, et al.,
12                                  Defendant(s).

13
14         Presently before the court is plaintiff Branch Bank and Trust Company, LLC's ("BB&T")
15   motion for summary judgment and application for a deficiency judgment hearing. (Doc. # 79).
16   Defendants filed an opposition to plaintiff's motion, (doc. # 87), and BB&T filed a reply, (doc. #
17   91).
18         Also before the court is defendant Ford Duneville, LLC and the individual defendants'
19   (collectively "defendants") [1] cross-motion for summary judgment, (doc. # 81), against BB&T.
20   BB&T filed a response (doc. # 86), and defendants filed a reply, (doc. # 90).
21   I.    Background
22         This action arises out of defendants' alleged breaches of secured loan agreements. Plaintiff
23   BB&T is the successor in interest to Colonial Bank. BB&T acquired the right to secured loans
24   from *the Federal Deposit Insurance Company ("FDIC")*, which was acting as Colonial Bank's
25   receiver.
26   _____
27         [1] Individual defendants include Craig Michael, Donald Borsack, Marleau Borsack, James
     Borsack, Renee Borsack, Edward Borsack, Lisa Borsack, John Gurell, Mary Gurell. For the sake
28   of brevity, the court declines to list out each named defendant in this cause of action.

James C. Mahan
U.S. District Judge

Following three non-judicial foreclosure sales on the properties that secured the loans, BB&T filed three complaints to obtain deficiency judgments against defendants. BB&T also alleged breach of contract claims against guarantor defendants and bad faith claims against all defendants. (Doc. # 1). On February 19, 2015, the court consolidated the three cases.[2] (Doc. # 78). The undisputed facts are as follows.

A.    *The cases and loans*

i.    The Ford Duneville case

On November 13, 2007, borrower Ford Duneville executed and delivered a promissory note secured by deed of trust to Colonial Bank, in the amount of $10,350,000.00 (the "FD loan"). (Docs. # 1, 87). Colonial Bank secured the note by a deed of trust and assignment of rents ("deed of trust") encumbering the Ford Duneville property. Colonial Bank recorded the deed of trust on November 29, 2007.

Also on November 13, 2007, Craig S. Michael, Donald D. Borsack, Marleau D. Borsack, James Borsack, Renee Borsack, Edward Borsack, Lisa Borsack, John Gurell, and Mary Gurell ("FD Guarantors") guaranteed the payment of indebtedness of the FD loan's promissory note.

ii.    Post Rainbow loan

On May 1, 2007, borrower Post Rainbow executed and delivered a promissory note to Colonial Bank in the amount of $5,590,000.00. (Docs. # 1, 87) (the "PR loan"). Colonial Bank secured the note by a deed of trust encumbering the Post Rainbow property. Colonial Bank recorded the deed of trust on May 4, 2007.

Also on May 1, 2007, Arvest, LLC, The Craig S. Michael Family Limited Partnership, Craig S. Michael, Donald D. Borsack, Marleau D. Borsack, James Borsack, Renee Borsack, Edward Borsack, John Gurell, Mary Gurell, and William Borsack ("PR Guarantors") guaranteed the payment of indebtedness of the PR loan's promissory note. (Doc. # 79, Exhibit 15).

---

[2] The consolidated cases are: *Branch Banking and Trust Company v. Ford Duneville, LLC, et al.*, 2:11-cv-01776-JCM-GWF and *Branch Banking and Trust Company v. Post Rainbow, LLC et al.*, 2:11-cv-01820-GMN-NJK and *Branch Banking and Trust Company v. The Borsack Group, Inc. et al.*, and 2:11-cv-01819-KJD-VCF.

James C. Mahan
U.S. District Judge

- 2 -

iii.     The Borsack Group loan

On April 9, 2007, borrower Borsack Group executed and delivered a promissory note to Colonial Bank, in the amount of $8,300,000.00 (the "BG loan"). (Docs. # 1, 87). Colonial Bank secured the loan by a deed of trust, recorded on April 24, 2007.

Also on April 9, 2007, Donald D. Borsak, Marleau Borsack, Donald E. Borsak, James E. Borsack, Edward Borsack, Mary Gurell, and William Borsack *guaranteed the payment of indebtedness of the BG loan's promissory note.*

B.     FDIC receivership, payment failure, and foreclosure

On August 14, 2009, the FDIC closed Colonial Bank, became its receiver, and liquidated its assets. (Doc. # 1, p. 4). BB&T acquired the BG loans, FD loans, and PR loans from the FDIC. On August 6, 2010, BB&T issued demand letters to all defendants to pay the balances due for the loans within fifteen days. No defendant paid any of the balances.

On June 27, 2011, BB&T foreclosed on the properties and bought the Borsack Group and Ford Duneville properties with credit bids of $925,000.00 and $888,000.00, respectively. (Doc. # 1, p. 6). On October 19, 2011, BB&T foreclosed on the Post Rainbow property and bought the property with a credit bid of $704,000.00.

On June 27, 2011, the day of the Borsack Group and Ford Duneville foreclosures, the BG loan's balance was $2,771,000.00 and the interest due was $269,041.85. The FD note's balance was $2,608,739.00 and the interest due was $262,721.74. On October 19, 2011, the date of the Post Rainbow foreclosure, the PR note's balance was $1,856,000.00 and the interest due was $103,884.93.

BB&T alleges the following deficiencies remain after the property foreclosures: $1,836,460.74-$1,861,460.74 for Ford Duneville; $566,022.47-$1,111,022.47 for Post Rainbow; $1,525,560.02-$1,980,560.02 for Borsack Group.

## II.     Legal standard

The Federal Rules of Civil Procedure provide for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a

James C. Mahan
U.S. District Judge

- 3 -

1   judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is

2   "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

3   323-24 (1986).

4          In determining summary judgment, a court applies a burden-shifting analysis.  "When the

5   party moving for summary judgment would bear the burden of proof at trial, it must come forward

6   with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at

7   trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine

8   issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests.,*

9   *Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

10          In contrast, when the nonmoving party bears the burden of proving the claim or defense,

11   the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

12   element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed

13   to make a showing sufficient to establish an element essential to that party's case on which that

14   party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323-24.  If the moving

15   party fails to meet its initial burden, summary judgment must be denied and the court need not

16   consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60

17   (1970).

18          If the moving party satisfies its initial burden, the burden then shifts to the opposing party

19   to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

20   *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the

21   opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient

22   that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

23   versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

24   631 (9th Cir. 1987).

25   . . .

26   . . .

27   . . .

28   . . .

**James C. Mahan**
**U.S. District Judge**

**III.     Discussion**

     *A.     BB&T's contractual claims*

         i.     Liability under the loan and guaranty agreements

BB&T brings claims for breach of guaranty against guarantor defendants and breach of implied covenant of good faith and fair dealing against all defendants. BB&T essentially alleges that guarantor defendants owe the same damages under BB&T's contractual claims as borrower defendants owe under N.R.S. 40.451.[3]

Defendants argue that the court should grant summary judgment against BB&T because Nevada's deficiency statutes bar BB&T from bringing contractual claims on the note and guaranty after BB&T foreclosed on the properties that secured them.

For a breach of contract, Nevada law requires: (1) a valid contract; (2) plaintiff's performance; (3) defendant's breach; (4) damages resulting from the breach. *See Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006). An action on a debt arises out of the promissory note, not the interest that secures it. *Branch Banking & Trust Co. v. 27th & S. Holding, LLC*, No. 2:12-CV-01781-LRH, 2015 WL 3886754, at *5 (D. Nev. June 24, 2015); *Key Bank of Alaska v. Donnels*, 787 P.2d 382, 384 (Nev. 1990) (holding that a deficiency action, after partial satisfaction through sale of the security, is an action on the debt).

BB&T's foreclosure sales do not extinguish defendants' contractual liabilities for their debts. *See generally Branch Banking & Trust Co. v. Eloy Bus. Park, LLC*, No. 2:12-CV-01679-LRH, 2015 WL 3879828, at *3-6 (D. Nev. June 23, 2015); *Branch Banking & Trust Co. v. Pebble Creek Plaza Pad, LLC*, No. 2:12-CV-01736-LRH, 2015 WL 3879832, at *4-5 (D. Nev. June 23, 2015). Further, a guarantor is "liable on his own obligation, which is absolute and independent of the note itself." *Randono v. Turk*, 466 P.2d 218, 223 (Nev. 1970).

---

[3] BB&T alleges that guarantor defendants owe "payment of the difference between the total indebtedness and the greater of (a) the fair market value of the propert[ies] as of the date of the trustee's sales, or (b) the amount for which the propert[ies] were sold at the trustee's sales." (Doc. # 1, p. 7).

James C. Mahan
U.S. District Judge

Here, guarantor defendants executed valid, enforceable contracts with Colonial Bank to guaranty the payment of borrower defendants' loans. Borrower defendants' loan defaults created a distinct contractual right for BB&T to pursue recovery, separate from BB&T's right to pursue recovery based on the debts' securities (the deeds of trust). *Donnels*, 787 P.2d at 384.

The guarantors breached the contract when they failed to repay the debt upon the borrowers' defaults. There is no genuine issue of material fact that guarantor defendants failed to repay the loans. Therefore, the court will grant summary judgment against guarantor defendants on the issue of the guarantors' liabilities.[4]

Further, because the court finds that guarantor defendants breached their guaranty contracts with BB&T, BB&T may pursue its contract derivative claim for breach of implied covenant of good faith and fair dealing against guarantor defendants. Accordingly, the court will deny defendants' cross-motion for summary judgment on defendants' liability breach of implied covenant of good faith and fair dealing.[5]

ii.       Application of N.R.S. 40.451

BB&T asks the court to find, as a matter of law, the principal balances and accrued interests due under each of the loans on the date of the trustee sales. (Doc. # 79, p. 19). On June 27, 2011, defendants owed $2,608,739.00 on the FD Note and $262,721.74 in accrued interest. (*See id.*, Nugent Declaration). Also on June 27, 2011, defendants owed $2,771,246.57 on the BG Note and $269,041.85 in accrued interest. (*Id.*). On October 19, 2011, defendants owed $1,856,000.00 on the PR Note and $103,884.93 in accrued interest. (*Id.*).

---

[4] BB&T also moved for summary judgment as to borrower defendants' liabilities for breach of contract claims. (Doc. # 79, p.14). However, BB&T fails to state this issue as a claim for relief in its complaint. Accordingly, the court declines to rule on borrower defendants' liabilities for breach of contract claims at this time.

[5] The court notes that BB&T did not move for summary judgment on its third claim for breach of the covenant of good faith and fair dealing. *See generally* Doc. # 53. Should BB&T elect to proceed on this claim, a proposed joint pretrial order shall be filed within thirty (30) days of the issuance of this order.

James C. Mahan
U.S. District Judge

- 6 -

Under N.R.S. 40.451, 'indebtedness' is the "principal balance of the obligation secured by a mortgage . . . together with all interest accrued and unpaid prior to the time of foreclosure sale, [and] all costs and fees of such a sale." Nev. Rev. Stat. Ann. § 40.451 (West 2014).

Defendants do not dispute the 'indebtedness' amount owed to BB&T on the foreclosure dates. Accordingly, the court grants BB&T's motion for summary judgment on the amount of 'indebtedness' pursuant to N.R.S. 40.451 for each loan.

### B.    BB&T's deficiency judgment application

BB&T also requests that the court grant its motion for deficiency judgment and set a date for a fair market value hearing, as required by Chapter 40 of the Nevada Revised Statutes. Defendants moved for summary judgment against BB&T because BB&T's application either failed to meet the statutory requirements or was untimely.

N.R.S. Chapter 40 provides a comprehensive scheme of creditor and debtor protection with respect to the foreclosure and sale of real property subject to security interests. *Keever v. Nicholas Beers*, 96 Nev. 509 (1980). Following a trustee's sale, Nevada law entitles a creditor to a deficiency judgment if "there is a deficiency of the proceeds of the sale and a balance remaining due to the judgment creditor or the beneficiary of the deed of trust, respectively." Nev. Rev. Stat. Ann. § 40.455(1) (West 2014).

### i.    Application of N.R.S. 40.430

Defendants argue that BB&T seeks double recovery for damages under Chapter 40, as well as breach of guaranty and breach of implied covenant of good faith and fair dealing. (Doc. # 86, p. 15). In its response, BB&T argues that Chapter 40 does not bar recovery on the contractual damages for the alleged deficiency amount.

Nevada's statutory scheme for deficiency judgments aims to prevent windfalls and unjust results. Nevada's "one-action rule" requires "but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate." N.R.S. 40.430(1). "Consequently, to recover a debt secured by real property in Nevada, a creditor must seek to recover on the property through judicial foreclosure before recovering from the debtor personally." *McDonald v. D.P. Alexander & Las Vegas Boulevard*, LLC, 123 P.3d 748, 750 (Nev. 2005). In

short, the statutory scheme prevents creditors from buying secured property at an artificially deflated price to increase a debtor's deficiency judgment. *See First Interstate Bank of Nev. v. Shields*, 730 P.2d 429, 431 (Nev. 1986).

Further, defendants correctly point out that guarantors of promissory notes secured by a deed of trust are entitled to Nevada's deficiency judgment statutory protections. (Doc. # 81, p.15). *See Shields*, 730 P.2d 429 at 431-32 (holding deficiency judgment legislation applicable to an action on a guaranty contract); *Walters*, 263 P.3d at 234 (applying deficiency defenses when a creditor proceeds with a non-judicial foreclosure). As a matter of law, BB&T's contractual claims must comply with the procedural requirements for deficiency judgments under N.R.S. 40.451 *et. seq.*

Here, BB&T foreclosed on the properties before seeking recovery on its contractual claims. The court has already determined liability on BB&T's contractual claims through summary judgment. All that remains is to determine damages, which the court will accomplish through a deficiency hearing.[6] Thus, defendants' argument that BB&T will gain double recovery are moot.

> ii.     Application of N.R.S. 40.457 & N.R.S. 40.459

Defendants raise several arguments related to BB&T's failure to comply with N.R.S. 40.457 and N.R.S. 40.459 requirements. Defendants claim these failures bar BB&T from recovering on defendants' debts. (Doc. # 81, pp. 2-4).

> a.     BB&T's consideration

Defendants argue that N.R.S. 40.459(1)(c) applies to the instant case because BB&T acquired the right to obtain the judgment from the FDIC. According to defendants, BB&T must provide a showing of the consideration it paid for the rights to the properties. Defendants argue that BB&T's failure to provide such evidence precludes a finding of summary judgment in BB&T's favor.

---

[6] The court notes that BB&T requested identical relief for its three claims further indicates that BB&T did not seek double recovery. Each claim alleges damages "in excess of $75,000" to be determined under the deficiency judgment calculation in N.R.S. 451 *et seq.*

James C. Mahan
U.S. District Judge

1  N.R.S. 40.459(1)(c) limits the recovery of parties that acquire the rights to deficiency

2  judgments from previous holders of the rights. Nev. Rev. Stat. Ann. § 40.459(1)(c) (West 2014).

3  This court has previously rejected similar arguments on this issue. In *Branch Banking and Trust*

4  *Co. v. Desert Canyon Phase II, L.L.C.*, the court ruled against the retroactive application of N.R.S.

5  40.459(1)(c) to an assignment from the FDIC to BB&T that occurred before the statute's effective

6  date, June 10, 2011. No. 2:12-CV-1463 JCM PAL, 2014 WL 2468610, at *3-4 (D. Nev. June 2,

7  2014); *see also Branch Banking & Trust Co. v. Pahrump 194, LLC*, 51 F. Supp. 3d 993, 997 (D.

8  Nev. 2014) (finding "no reason to depart" from a past ruling that barred retroactive application of

9  N.R.S. 40.459(1)(c)). This court found that the application of N.R.S. 40.459(1)(c) violated the

10  Constitution.

11  Here, BB&T similarly secured rights to the loans from the FDIC before the statute's

12  enactment.[7] Accordingly, N.R.S. 40.459(1)(c) does not apply and the parties' arguments regarding

13  BB&T's consideration are unavailing.

14  *b.   Calculation of the deficiency judgment*

15  BB&T requests that the court set a deficiency hearing under N.R.S. 40.457 to determine

16  damages arising from defendants' contractual liabilities. (Doc. #79, p. 19).

17  N.R.S. 40.457 requires a hearing on the fair market value of the property sold and notice

18  of the hearing to all defendants against whom a deficiency judgment is sought. Following a

19  hearing, the court must award a judgment for the lowest amount from the following:

20  (a) The amount by which the amount of the indebtedness . . . exceeds the
    fair market value of the property sold at the time of sale, with interest.
21  (b) The amount which is the difference between the amount for which the
    property was actually sold and the amount of the indebtedness which was
22  secured . . . .[8]

23  Nev. Rev. Stat. Ann. § 40.459(a)(b) (West 2014).

24

25

26  _____

27  [7] BB&T secured the loans from the FDIC in August, 2009. Nevada enacted the statute in
    2011.

28  [8] The court has already determined that N.R.S. 40. 459(1)(c) does not apply to the instant
    case.

James C. Mahan
U.S. District Judge

- 9 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, BB&T has foreclosed on the properties at issue. Each party hired experts to determine the fair market value of the properties at the time of the trustee sales. However, N.R.S. 40.457 requires the court to ascertain a creditor's damages in a fair market value hearing.

The court established above that N.R.S. 40.459(1)(c) does not apply retroactively to these facts. Therefore, the court will calculate damages under N.R.S. 40.459(1)(a) and (b). Accordingly, the court will grant BB&T's request to set a deficiency hearing to determine the fair market value of the properties.

iii.     Application of N.R.S. 40.455(1)

The parties dispute whether BB&T's complaint, which asserts a deficiency against defendants, met N.R.S. 40.455(1)'s requirement for a deficiency judgment application within six months after a foreclosure sale. Defendants argue that the plain language of N.R.S. 40.455(1) requires an application by motion for deficiency judgment and that BB&T's complaint does not suffice.

N.R.S. 40.455(1) requires creditors to apply for a deficiency judgment hearing within six months of the foreclosure on a property. Nev. Rev. Stat. Ann. § 40.455(1) (West 2014). N.R.S 40.455's six month deadline is a procedural limitation meant to "protect a defendant against the evidentiary problems associated with defending a stale claim" and to "promote repose." *Nev. State Bank v. Jamison Family P'ship*, 801 P.2d 1377, 1381 (Nev. 1990). However, "N.R.S. 40.455(1) does not state how an application should be made." *Walters v. Eighth Jud. Dist. Ct.*, 263 P.3d 231, 232 (Nev. 2011).

The Supreme Court of Nevada has relied on the Nevada Rules of Civil Procedure to interpret whether a party has submitted a proper application under N.R.S. 40.455(1). *Id.* Nevada Rule of Civil Procedure 7 requires parties to make applications to the court by motion, in writing, with the particular grounds, and setting forth the relief sought. Nev. R. Civ. P. 7.

Here, BB&T's complaint asked for a deficiency judgment and was filed within six months of the foreclosures, but BB&T did not file a separate motion. Defendants' reading of N.R.S. 40. 455 is unreasonable because it imposes an unstated requirement for BB&T to resubmit an identical

application, but in motion form. *Washington v. State*, 30 P.3d 1134, 1136 (Nev. 2001) (a statute should be construed to avoid unreasonable or absurd results).

Courts have decided similar cases without requiring creditors to resubmit a deficiency application in motion form. *See Shields*, 102 Nev. at 618 n. 2 (a complaint qualified as an application under N.R.S. 40.455); *Jamison*, 801 P.2d at 1381 (an answer and counterclaim constituted an application). Therefore, the court will grant BB&T's request for a deficiency judgment hearing because it satisfies the requirements of N.R.S. 40.455(1). Accordingly, the court denies defendants' cross-motion for summary judgment against BB&T.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that BB&T's motion for summary judgment, (doc. # 79), be, and the same hereby is, GRANTED in part, as to all issues except the fair market value of the property at the time of the trustee's sale.

IT IS FURTHER ORDERED that plaintiff's motion for a deficiency hearing be, and the same hereby is, granted to the extent it requests a valuation hearing.

IT IS FURTHER ORDERED that BB&T's application for deficiency judgment hearing, (doc. # 80), is GRANTED. The parties shall have thirty days from the issuance of this order to file opening briefs not to exceed twenty pages concerning the fair market value of the property at the time of the foreclosure sale. The parties shall then have ten days thereafter to file response briefs not to exceed five pages. Thereafter, the court will set a deficiency hearing pursuant to N.R.S. 40.457(1).

IT IS FURTHER ORDERED that defendants' motion for summary judgment, (doc. # 81), be and the same hereby is, DENIED.

DATED August 10, 2015.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge